UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:13-cr-00108-JMS-DKL-4 |
| | ) | |
| ROBBYN KACZMAREK, | ) | |
|    *Defendant.* | ) | |

## ORDER

Presently pending before the Court is Defendant Robbyn Kaczmarek's Motion to Suppress. [Dkt. 112.] For the reasons explained, the Court **DENIES** the motion. Three of Ms. Kaczmarek's codefendants also have suppression motions pending before the Court. The Court decides those motions in separate Orders also issued on this date.

### I.
### BACKGROUND

The Court draws the factual background from the undisputed evidence submitted by the parties.

On October 3, 2011, Indiana State Police Officer Timothy Cummins sought judicial authorization in Morgan County Superior Court to attach a Global Position System Unit ("GPS Unit") to Ms. Kaczmarek's vehicle. [Dkt. 113-1.] In support of this authorization, Officer Cummings submitted an affidavit detailing his knowledge regarding Ms. Kaczmarek's activities. [*Id.*] In pertinent part, the affidavit stated:

> During the last month, I have been involved in a marijuana indoor grow investigation involving several grow locations believed to be in Monroe County and Southern Morgan County. I received information from an unidentified informant who is leaving tips that a female named Robbyn L. Kaczmarek . . . is currently involved in [a] marijuana grow operation. The informant provided detailed information and said Kaczmarek was the caretaker of multiple grow houses. A copy of a grow calendar from Kaczmarek was forward[ed] to our office. The informant

- 1 -

also advised [that] Kaczmarek's Mercedes was going to be repossessed. Further investigation determined it had been repossessed. The informant advised that Kaczmarek was residing with her 83 year old grandmother at 801 Lafayette Ave. in Oolitic, IN, and that she just bought a Tan Mercury Mountaineer. The informant added that she would leave the residence at around 9 AM to go to work and travel to various grow houses and return to the residence after 9 PM. Kaczmarek was observed leaving and returning on several occasions as the informant had previously advised. I located the Tan Mercury Mountaineer . . . parked outside her grandmother['s] residence located on 8th street at Lafayette Ave. in Oolitic, [IN] on September 28, 2011 at 11 PM. Attempts have been made to follow her but have been unsuccessful.

I am requesting permission to install a GPS to the vehicle described as a Tan Mercury Mountaineer . . . . The vehicle has been parked on a public street at the residence of 801 Lafayette Ave., Oolitic, IN. The installation and monitoring of this GPS will allow us to track Robbyn Kaczmarek['s] movements and hopefully assist us in locating grow house locations.

[Dkt. 113-1 at 1.]

Based on this affidavit, Morgan County Superior Court Judge Craney signed an Order authorizing law enforcement to install a GPS Unit on Ms. Kaczmarek's vehicle for seven days ("<u>State GPS Authorization</u>"). [Dkt. 113-2 at 1-2.] On October 11, 2011, Judge Craney authorized use of the GPS Unit for another seven days. [Dkt. 113-3 at 1-2.] The State GPS Authorization did not purport to be a search warrant, nor did Judge Craney making a finding of probable cause in support of its issuance. [*See* dkt. 113-2 at 1-2.] The parties do not dispute that the law enforcement's use of the GPS Unit revealed several locations visited by Ms. Kaczmarek, which in turn supported search warrant applications for several houses and the seizing of evidence from those houses. [Dkts. 113 at 3; 121 at 3.]

## II.
### DISCUSSION

Ms. Kaczmarek seeks suppression of all evidence directly or indirectly derived from law enforcement's use of the GPS Unit on her vehicle. Because law enforcement received authorization to attach the GPS Unit based solely on Officer Cummings' affidavit, Ms. Kaczmarek's

opening brief focuses solely on whether Officer Cummings' affidavit created sufficient probable to support the issuance of the State GPS Authorization. [*See* dkt. 113 at 6-13.] The Government, while not explicitly conceding that Office Cummings' affidavit was insufficient to support probable cause, does not defend it as sufficient.[1] [Dkt. 121 at 6.] Instead, the Government contends that suppression is unwarranted because law enforcement relied in good faith on the State GPS Authorization in using the GPS Unit. [*Id.*] In reply, Ms. Kaczmarek contends that the good-faith exception to suppression should not apply in this case. [Dkt. 122 at 3-8.]

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Following law enforcement's use of the GPS Unit on Ms. Kaczmarek's vehicle, the Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a [Fourth Amendment] 'search.'" *United States v. Jones*, 132 S. Ct. 945, 949 (2012). The Government recognizes this and therefore does not dispute that the use of the GPS Unit on Ms. Kaczmarek's vehicle was a

---

[1] The Government filed a joint response brief to Ms. Kaczmarek's and Jordan Allen's separate Motions to Suppress. [*See* dkt. 121.] The Court therefore addresses the Government's arguments relevant to each defendant separately in each Order issued on this day.

Fourth Amendment search. [Dkt. 121 at 7.] Because the search occurred without a warrant, it violated Ms. Kaczmarek's Fourth Amendment rights.[2]

It is well-established, however, that a violation of one's Fourth Amendment rights does not automatically result in the suppression of the evidence discovered as a result of the violation.[3] *See Herring v. United States*, 555 U.S. 135, 140 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."); *United States v. Leon*, 468 U.S. 897, 905-06 (1984) (rejecting the contention that "the exclusionary rule is a necessary corollary of the Fourth Amendment"). One basis to decline suppression of evidence obtained in violation of the Fourth Amendment is the application of the good-faith exception, and this is the basis on which the Government relies. The good-faith exception provides that evidence obtained as a result of a Fourth Amendment violation should not be suppressed if law enforcement had a "reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." *Leon*, 468 U.S. at 909. Exclusion of such evidence is unwarranted because the exclusionary "rule's sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011); *see United States v. Brown*, --- F.3d ----,

---

[2] The Court notes that the parties did not pursue the avenue left open in *Jones*—that, "even if the attachment and use of [a GPS] device [is] a search, it [is] reasonable—and thus lawful—under the Fourth Amendment because 'officers had reasonable suspicion [or] probable cause, to believe that [the defendant] was [involved in criminal activity]." *Jones*, 132 S. Ct. at 954. The Government recognizes that this argument was available but declined to pursue it. [*See* dkt. 121 at 10 n.3.] The Supreme Court did not resolve this question in *Jones* because it was not argued before either the district court or the D.C. Circuit. The Court follows suit. Because the Government did not pursue this argument, the Court will not consider it. *See Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013).

[3] As stated above, the Government filed a joint response brief to Ms. Kaczmarek's and Mr. Allen's Motions, [dkt. 115], and Mr. Allen expressly adopted Ms. Kaczmarek's arguments with respect to the good-faith exception in lieu of articulating his own, [dkt. 126]. However, the Court concludes each defendant's motion to suppress is best resolved separately. While there is significant overlap in the Court's analysis, individual resolution is appropriate. Therefore, the Court's analysis with respect to the application good-faith exception and the exclusionary rule is substantially similar for Ms. Kaczmarek's and Mr. Allen's motions.

2014 WL 821278, at *1 (7th Cir. 2014) ("The exclusionary rule is designed to deter violations of the fourth amendment."). Therefore, "[w]here the official action was pursued in complete good faith . . . the deterrence rationale loses much of its force." *Leon*, 468 U.S. at 919.

The Government argues that suppression is unwarranted for either of two reasons: (1) the *Davis* good-faith exception applies, [Dkt. 121 at 9-10 n.2]; and (2) law enforcement relied in good faith on judicial authorization for their actions, [*id.* at 7-11]. Ms. Kaczmarek disputes whether either good-faith exception applies. The Court addresses the parties' arguments regarding each of the two good-faith exceptions in turn.

### A. The *Davis* Good-Faith Exception Applies

The Government contends that at the time the GPS Unit was installed on Ms. Kaczmarek's vehicle "binding appellate precedent"—specifically, *United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011), *vacated and remanded by Cuevas-Perez v. United States*, 132 S. Ct. 1534 (2012), and *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007)—"permitted the attachment and use of the GPS tracker on [Ms.] Kaczmarek's vehicle without recourse to a warrant on a showing of probable cause. Therefore, the GPS [Unit] at issue in this case also should fall . . . within the so-called *Davis* good-faith exception." [Dkt. 121 at 9-10 n.2.] Ms. Kaczmarek does not dispute that at the time relevant to this case "no binding case law in this Circuit recognized that the attachment and use of a GPS tracker constituted a search under the Fourth Amendment." [Dkt. 122 at 8.] Instead, she points the Court to *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), to argue that it would be unfair "to assert that the officers had 'no inkling'" that the use of the GPS Unit may constitute a Fourth Amendment search. [Dkt. 122 at 8.] After *Maynard*, says Ms. Kaczmarek, "law enforcement and prosecutors were on notice that warrant-

less use of GPS tracking devices was not the unanimous law of the land and they should proceed with caution." [*Id.*]

The Supreme Court held in *Davis* that the good-faith exception applies to "searches conducted in objectively reasonable reliance on binding appellate precedent." *Davis*, 131 S. Ct. at 2426. The Supreme Court explained its conclusion as follows: "About all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules. But by the same token, when binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." *Id.* at 2429 (emphasis in original) (citations and quotation marks omitted).

The Court's analysis of whether the good-faith exception applies must begin with the Court's recent decision in a similar case: *United States v. Taylor*, --- F.Supp.2d ----, 2013 WL 5817246 (S.D. Ind. 2013). As in this case, the Court had to decide in *Taylor* whether the *Davis* good-faith exception applied to law enforcement's warrantless attachment and use of a GPS device to track the defendant Mr. Taylor's car. More specifically, the Court had to determine whether *Garcia* and *Cuevas-Perez*—the "binding appellate precedent" referenced in *Davis*, 131 S. Ct. at 2429—permitted law enforcement to attach and use the GPS device in the manner it did. Defendant Mr. Taylor argued that his case was different than *Garcia* and *Cuevas-Perez* in three important respects, which precluded law enforcement from relying on those cases to attach the GPS device to his vehicle and track his movements in the manner they did. The Court reasoned as follows:

> Mr. Taylor points to three differences between the instant case and *Garcia* and *Cuevas-Perez*: (1) law enforcement here sought to use the GPS Unit for up to six-

ty days; (2) law enforcement sought to attach the GPS device "while the vehicle was either in a public place or upon private property where members of the general public would have access to such a vehicle,"; and (3) law enforcement sought permission to utilize Mr. Taylor's vehicle's battery to power the GPS Unit.

The Court agrees with Mr. Taylor that the three differences between this case and the then-binding Seventh Circuit precedent, taken together, preclude the application of the *Davis* good-faith exception in this case. Simply put, law enforcement could not have objectively relied on *Garcia* and *Cuevas-Perez* when the cases do not explicitly, or for that matter implicitly, authorize the specific actions taken here, especially when both cases raise concerns about the constitutionality of the extent of law enforcement's actions. First, contrary to law enforcement's desire to utilize Mr. Taylor's vehicle's battery to power the GPS Unit, the Seventh Circuit in *Garcia* intimated that the use of a GPS device that draws power from the vehicle's battery could constitute a seizure under the Fourth Amendment. *See Garcia*, 474 F.3d at 996. Second, contrary to law enforcement's wish to attach the GPS Unit while Mr. Taylor's vehicle was on public or private property that the public could access, the Seventh Circuit in both *Cuevas-Perez* and *Garcia* specifically highlighted the fact that the GPS device in each of those cases was installed on the vehicles when they were parked in a public area. *See Cuevas-Perez*, 640 F.3d at 272; *Garcia*, 474 F.3d at 995.

Third and perhaps most importantly, contrary to law enforcement's desire here to utilize the GPS Unit continuously for sixty days, the Seventh Circuit in *Cuevas-Perez* specifically declined to decide whether such lengthy surveillance constituted a Fourth Amendment search.

*Taylor*, 2013 WL 5817246, at *6-7 (citations omitted).

The Court therefore rejected the Government's position in *Taylor* that *Garcia* and *Cuevas-Perez* held that "the warrantless placement and subsequent monitoring of a GPS tracking unit on a defendant's vehicle [does] not violate the defendant's Fourth Amendment rights." *Id.* at *7. Instead, the Court concluded that "then-binding Seventh Circuit precedent was much more nuanced, and the Government did not attempt to 'scrupulously adhere[]' to it when utilizing the GPS Unit to track Mr. Taylor. . . . Therefore, the three difficulties identified by Mr. Taylor, taken together, preclude the application of the *Davis* good-faith exception." *Id.* at *7 (quoting *Davis*, 131 S. Ct. at 2434).

The Government understandably did not rehash at length in this case the argument this Court had recently rejected in *Taylor*. Following the parties' briefing of this motion, however, the Seventh Circuit cast doubt on this Court's reasoning in *Taylor*. The Seventh Circuit described *Garcia* and *Cuevas-Perez* as establishing the "binding appellate precedent" for the purpose of the *Davis* good-faith exception. *Brown*, 2014 WL 821278, at *1. Those cases, said the Seventh Circuit, "had established that installation of a GPS device, and the use of the location data it produces, are not within the scope of the fourth amendment. It appears to follow that the exclusionary rule does not apply to the acquisition of GPS location data, within the Seventh Circuit, before *Jones*." *Id.*; *see also id.* at *2 ("We concluded in *Garcia* and *Cuevas-Perez* that . . . tracking a car's location by GPS is not a search no matter how long tracking lasts."). Based on the Seventh Circuit's broader characterization of the holdings in *Garcia* and *Cuevas-Perez* than this Court's in *Taylor*, this Court can no longer adhere to its narrower reading of those cases. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (citations omitted).

Ms. Kaczmarek challenges only whether probable cause existed such that law enforcement could use the GPS Unit to track her vehicle's movement. [*See* dkt. 113 at 13.] Although *Jones* has since instructed that this is a Fourth Amendment search, law enforcement utilized the GPS Unit in this case before *Jones* and after *Garcia* and *Cuevas-Perez*. Thus law enforcement could have relied in good faith on the latter two cases—which at that time were "binding appellate precedent"—to conclude "that installation of a GPS device, and the use of the location data it produces, are not within the scope of the fourth amendment." *Brown*, 2014 WL 821278, at *1.

The Seventh Circuit made clear that when this is the case—that the GPS Unit in question was used after *Garcia* but before *Jones*—"the exclusionary rule does not apply . . . in the Seventh Circuit."[4]  *Id.*  Accordingly, for this reason alone, the exclusionary rule does not apply and Ms. Kaczmarek's Motion to Suppress must be denied.

      **B.**     **Law Enforcement Reasonably Relied on Judicial Authorization to use the GPS Unit**

The Government also pursues an alternative basis for the Court to reject application of the exclusionary rule in this case—namely, that the exclusion of evidence is unwarranted when law enforcement relies on judicial authorization for their actions.  [Dkt. 121 at 7-9.]  Here, says the Government, Officer Cummings sought and received judicial authorization for the installation and use of the GPS Unit on Ms. Kaczmarek's vehicle, leading law enforcement to reasonably believe such actions were lawful under the Fourth Amendment.  [*Id.*]  If this belief is reasonable, continues the Government, suppression of the evidence could not deter any wrongful police behavior.  [*Id.*]  In short, this is the line of reasoning the Court adopted in its recent decision in *Taylor*, and the Government argues that it is equally applicable to this case.  [*Id.*]

Ms. Kaczmarek does not address *Taylor* in her reply brief.  Nor does she explain why the reasoning this Court followed in *Taylor* is inapplicable here.  She instead contends that Officer Cummings' affidavit fell so short of establishing probable cause that he could not have reasonably relied on the State Court GPS Authorization to believe that the use of the GPS Unit did not

---

[4] *Brown* makes clear that Ms. Kaczmarek's reliance on the D.C. Circuit's decision in *Maynard* to preclude application of the *Davis* good-faith exception, [dkt. 122 at 8], is misplaced.  While "[t]here is legitimate debate about whether precedent from Circuit A could be deemed 'binding' (for the purpose of *Davis*) when the search occurs in Circuit B, where the issue remains unresolved," the search in this case occurred in the Seventh Circuit at a time when the issue was resolved—"binding appellate precedent" held "that tracking a car's location by GPS is not a search."  *Brown*, 2014 WL 821278, at *2-3.  Thus Ms. Kaczmarek cannot rely on D.C. Circuit precedent to argue that law enforcement in the Seventh Circuit could not rely in good faith on Seventh Circuit precedent.

violate her Fourth Amendment rights. [Dkt. 122 at 2-8.] Specifically, she discusses several alleged deficiencies in Officer Cummings' affidavit, and based on these alleged deficiencies, argues that Officer Cummings "knew, or should have known, that reliance on the search warrant was ill-advised." [*Id.* at 7.] In conclusion, Ms. Kaczmarek argues the exclusionary rule should apply because law enforcement's "reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant [s]he issues must be objectively reasonable, and it is clear in this case the officer has no reasonable grounds for believing that the warrant was properly issued." [*Id.* at 9.]

Ms. Kaczmarek's focus on whether Officer Cummings should have known that his affidavit does not establish probable cause overlooks the fact that, at the time Officer Cummings sought and received judicial authorization to use the GPS Unit, the GPS tracking of a vehicle was not considered to be a Fourth Amendment search. *See Brown*, 2014 WL 821278, at *1. As the Government rightly argues, [dkt. 121 at 9-10], and the Seventh Circuit made clear in *Brown*, "[b]efore *Jones*, 'binding appellate precedent' in this circuit had established that installation of a GPS device, and the use of the location data it produces, are not within the scope of the fourth amendment." *Brown*, 2014 WL 821278, at *1 (citing *Garcia*, 474 F.3d 994; *Cuevas-Perez*, 640 F.3d 272). Therefore, a lack of good-faith cannot be demonstrated by the alleged obvious lack of probable cause, as Officer Cummings had no reason to believe that probable cause was necessary. Relatedly, this is likely the reason why the State GPS Authorization was not a search warrant and why no probable cause determination was made by the issuing judge. [*See* dkt. 113-2 at 1-2.]

Despite the fact that neither probable cause nor a warrant was necessary, Officer Cummings took the step of receiving judicial authorization for his conduct. Officer Cummings' deci-

sion to do so is what makes this case analogous to this Court's recent decision in *Taylor*. Indeed, the Court's reasoning in *Taylor* is equally applicable here and is therefore included in relevant part:

> Even if a specifically recognized good-faith exception does not apply, such as that recognized in *Davis* or *Leon*, suppression is not automatically warranted. The Court still must independently assess in each given case whether the exclusionary rule should apply. This is because the Supreme Court has made clear that any assessment of whether the exclusionary rule applies always requires a "rigorous weighing of its costs and deterrence benefits." *Davis*, 131 S. Ct. at 2427; *see Guzman v. City of Chicago*, 565 F.3d 393, 398 (7th Cir. 2009) ("[T]he benefits of exclusion must outweigh the costs."). Suppression imposes a "heavy toll" on "both the judicial system and society at large," as it "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence." *Id.*; *see Illinois v. Krull*, 480 U.S. 340, 352-53 (1987) (holding that the "incremental deterren[ce]" gained by suppression "must be weighed against the 'substantial social costs exacted by the exclusionary rule'") (quoting *Leon*, 468 U.S. at 907). And "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." *Davis*, 131 S. Ct. at 2427 (alteration in original) (quoting *Herring v. United States*, 555 U.S. 129, 143 (2009)); *see United States v. Williams*, 731 F.3d 678, 689-90 (7th Cir. 2013) ("[C]ourts should not exclude evidence unless the actions in question were 'sufficiently deliberate that exclusion can meaningfully deter' similar actions in the future, and that the actions were 'sufficiently culpable that such deterrence is worth the price paid by the judicial system.'") (quoting *Herring*, 555 U.S. at 144). Specifically, the exclusionary rule is only meant to deter future conduct of law enforcement that is "deliberate, reckless, or grossly negligent." *Herring*, 555 U.S. at 144. Therefore, any time the "police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis*, 131 S. Ct. at 2427-28 (citations and quotation marks omitted).
>
> Here, the Court cannot conclude that law enforcement's conduct was anything but objectively reasonable; it certainly was not reckless or grossly negligent. Instead of unilaterally deciding that they could attach the GPS Unit to Mr. Taylor's car, law enforcement sought *and received* judicial authorization to use the GPS Unit . . . . . Although the Government conceded that the authorization was not the equivalent of a search warrant, it was nonetheless permission from a "detached and neutral magistrate" to use the GPS Unit in the manner they did, *Leon*, 468 U.S. at 900. The fact that the judicial authorization on which law enforcement relied did not, as in *Leon*, take the form of a search warrant, does not undermine the rationale underlying *Leon*—namely, that the exclusionary rule "should not be applied" when law enforcement "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918-19. When law en-

forcement seek and obtain judicial approval for the precise conduct in which they seek to engage, their belief that they did not violate the Fourth Amendment is an objectively reasonable one. True, law enforcement could have obtained a search warrant before using the GPS Unit. But, again, the Court cannot conclude that their decision otherwise was anything but reasonable in light of the judicial authorization they received to use the device without a search warrant.

In sum, the heavy costs of suppression do not outweigh its benefits in this case. When, as here, law enforcement officers seek judicial authorization for their actions—a step that courts should not discourage—and they receive such authorization, it is objectively reasonable for them to believe that the authorized actions do "not violate the Fourth Amendment." *Id.* at 918. Actions taken pursuant to judicial authorization certainly do not evince the "disdain for constitutional requirements" the exclusionary rule seeks to deter. *United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2010) (quoting *United States v. Cazares-Olivas*, 515 F.3d 726, 728 (7th Cir. 2008)). And if, as here, suppression would not result in the appreciable deterrence of the type of law enforcement conduct the exclusionary rule is meant to deter—*i.e.*, that which is culpable—there is insufficient deterrence value to outweigh the costs of suppression. Therefore, application of the exclusionary rule is not appropriate. *See Davis*, 131 S. Ct. at 2427 ("Real deterrence value is a 'necessary condition for exclusion' . . . .") (quoting *Hudson v. Michigan*, 547 U.S. 586, 596 (2006)).

*Taylor*, 2013 WL 5817246, at *6-7 (emphasis in original) (some citations altered or omitted) (footnote omitted).

The same reasoning applies here. Law enforcement sought and received judicial authorization to attach and use the GPS Unit on Ms. Kaczmarek's vehicle. As in *Taylor*, when law enforcement seeks and obtains judicial approval[5] for the precise conduct in which they seek to engage, their belief that they did not violate the Fourth Amendment is an objectively reasonable one. Their conduct is certainly not that which is "so deliberate that the exclusionary rule should apply." *Williams*, 731 F.3d at 689 (applying the exclusionary rule when a police officer's conduct "was both deliberate and culpable"). Accordingly, for this reason as well, application of the

---

[5] As the Court noted in *Taylor*, "[i]t is irrelevant to the suppression inquiry whether that judicial authorization was ultimately proper, as the purpose of the exclusionary rule is to deter wrongful law enforcement conduct, not errors made by the judiciary." *Taylor*, 2013 WL 5817246, at *10 n.8 (citing *Arizona v. Evans*, 514 U.S. 1, 14-16 (2009); *Leon*, 468 U.S. at 916).

exclusionary rule is not appropriate in this case, and Ms. Kaczmarek's Motion to Suppress must be denied.

### C. Ms. Kaczmarek is Not Entitled to a Hearing on Her Motion

Ms. Kaczmarek requests that the Court hold an evidentiary hearing "to allow [her] to develop a record and present argument on the sufficiency of the affidavit in support of the warrant." [Dkt. 113 at 13.] In her reply brief, she reiterates this request, asserting that questioning Officer Cummings at a hearing is "[t]he only way to make the determination . . . as to whether the good faith exception should apply." [Dkt. 122 at 10.] Furthermore, she says, "[t]he evidentiary hearing will allow testimony and evidence to determine the officer's level of involvement in obtaining and gathering the information he used to author the affidavit." [*Id.*]

The Court is not required to hold an evidentiary hearing on a motion to suppress "as a matter of course." *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007). A hearing is only required "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Id.* (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)); *see United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). To be entitled to a hearing, "the onus [is] on [the] defendant . . . to specifically allege[] a *definite disputed factual issue*, and to demonstrate its materiality." *McGaughy*, 485 F.3d at 969 (emphasis and third alteration in original) (citation and quotation marks omitted).

Ms. Kaczmarek falls well short of her burden to establish that she is entitled to an evidentiary hearing. The only justification for a hearing she provides is that it would assist in developing a record "on the sufficiency of the affidavit," [dkt. 113 at 13], and "whether the good faith

exclusionary rule is not appropriate in this case, and Ms. Kaczmarek's Motion to Suppress must be denied.

### C. Ms. Kaczmarek is Not Entitled to a Hearing on Her Motion

Ms. Kaczmarek requests that the Court hold an evidentiary hearing "to allow [her] to develop a record and present argument on the sufficiency of the affidavit in support of the warrant." [Dkt. 113 at 13.] In her reply brief, she reiterates this request, asserting that questioning Officer Cummings at a hearing is "[t]he only way to make the determination . . . as to whether the good faith exception should apply." [Dkt. 122 at 10.] Furthermore, she says, "[t]he evidentiary hearing will allow testimony and evidence to determine the officer's level of involvement in obtaining and gathering the information he used to author the affidavit." [*Id.*]

The Court is not required to hold an evidentiary hearing on a motion to suppress "as a matter of course." *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007). A hearing is only required "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Id.* (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)); *see United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). To be entitled to a hearing, "the onus [is] on [the] defendant . . . to specifically allege[] a *definite disputed factual issue*, and to demonstrate its materiality." *McGaughy*, 485 F.3d at 969 (emphasis and third alteration in original) (citation and quotation marks omitted).

Ms. Kaczmarek falls well short of her burden to establish that she is entitled to an evidentiary hearing. The only justification for a hearing she provides is that it would assist in developing a record "on the sufficiency of the affidavit," [dkt. 113 at 13], and "whether the good faith

exclusionary rule is not appropriate in this case, and Ms. Kaczmarek's Motion to Suppress must be denied.

### C. Ms. Kaczmarek is Not Entitled to a Hearing on Her Motion

Ms. Kaczmarek requests that the Court hold an evidentiary hearing "to allow [her] to develop a record and present argument on the sufficiency of the affidavit in support of the warrant." [Dkt. 113 at 13.] In her reply brief, she reiterates this request, asserting that questioning Officer Cummings at a hearing is "[t]he only way to make the determination . . . as to whether the good faith exception should apply." [Dkt. 122 at 10.] Furthermore, she says, "[t]he evidentiary hearing will allow testimony and evidence to determine the officer's level of involvement in obtaining and gathering the information he used to author the affidavit." [*Id.*]

The Court is not required to hold an evidentiary hearing on a motion to suppress "as a matter of course." *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007). A hearing is only required "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Id.* (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)); *see United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). To be entitled to a hearing, "the onus [is] on [the] defendant . . . to specifically allege[] a *definite disputed factual issue*, and to demonstrate its materiality." *McGaughy*, 485 F.3d at 969 (emphasis and third alteration in original) (citation and quotation marks omitted).

Ms. Kaczmarek falls well short of her burden to establish that she is entitled to an evidentiary hearing. The only justification for a hearing she provides is that it would assist in developing a record "on the sufficiency of the affidavit," [dkt. 113 at 13], and "whether the good faith

exception should apply," [dkt. 122 at 10]. These are generalized requests, not "specific[] allegat[ions] [of] a *definite disputed factual issue*." *McGaughy*, 485 F.3d at 969 (emphasis in original). Indeed, not once does Ms. Kaczmarek assert that a specific fact is in dispute. Nor, therefore, could she have demonstrated "its materiality." *Id.* Accordingly, her request for a hearing on her motion is denied.

## III.
### CONCLUSION

For the reasons explained, the Court **DENIES** Ms. Kaczmarek's Motion to Suppress. [Dkt. 112.]

04/07/2014

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**